UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA N. BOSTICK,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.
_____/

Case No.: 8:16-cv-1400-VMC-AAS

## DEFENDANT'S DAUBERT MOTION TO STRIKE CERTAIN EXPERT OPINIONS AND TESTIMONY OF ROBERT W. JOHNSON AND JAMES A. MILLS

Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, by and through its undersigned attorney, hereby moves this court to strike and exclude certain testimony and opinions of Plaintiff's retained economics experts, Robert W. Johnson and James A. Mills, of Robert W. Johnson & Associates (hereinafter "Johnson and Mills"), and states:

### FACTS

Plaintiff claims to have suffered numerous and significant injuries and damages as the result of a November 14, 2013, rear-end motor vehicle accident. At the time of the accident, Plaintiff was an insured of Defendant, State Farm, and she has filed this lawsuit against Defendant alleging breach of contract and seeking to recover uninsured motorist benefits. One of the items of damages Plaintiff is claiming in this lawsuit is loss of earning capacity and loss of future income.

Plaintiff has retained Johnson and Mills, who purport to be "forensic economists," to offer expert opinions in this matter. Johnson and Mills have prepared an "Economic Impact Report" (hereinafter the "economists' report") containing their opinions, which was disclosed by

1

Plaintiff pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P. (Exhibit A, attached.). The economists' report contains, essentially, opinions on two items of damages: 1) the value of Plaintiff's future medical expenses and "life care" needs (which, as its basis, uses a "Life Care Plan" prepare by another of Plaintiff's experts, Dr. Chris Leber); and 2) the expected value of Plaintiff's future lost income. This motion seeks to only strike the latter opinion concerning Plaintiff's future income.

Johnson and Mills opine that Plaintiff's future lost income has an expected value of $1,789,264 and a present value of $1,748,409. Assumptions that were part of the foundation of Johnson and Mills' opinions, all of which were at the direction of Plaintiff's counsel, include:

- That Plaintiff intended to work 12 more years, to age 70, per Plaintiff's counsel.
- That Plaintiff will stop working on October 1, 2017 (**the *very day after* the September docket this case is to be tried**), per Plaintiff's counsel.
- That Plaintiff will receive no mitigating income, per Plaintiff's counsel.

(See Ex. A) However, despite these foundational assumptions made by the retained experts, through information given to them by Plaintiff's counsel, the actual evidence in the case is as follows:

- Plaintiff intended to work until she was 67 or 67 and a half years old. (Plaintiff's deposition, pp. 84-85.)
- Plaintiff is still working as a professor at the University of Tampa. Nowhere in her pre-suit examination under oath, her deposition, or her answers to interrogatories did she ever testify that she has any imminent plan – or even a suggested plan - to quit her job. And she certainly has never testified that she is going to quit on October 1, 2017.
- If Plaintiff does leave her job early, she has disability that pays 60% of her salary.

2

(Plaintiff's deposition, pp. 84-85.) So, there is mitigating income.

## BURDEN OF PROOF

As the proponent of the expert testimony at issue, Plaintiff bears the burden of proving its admissibility under *Daubert* and FRE 702. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2000). Plaintiff simply cannot meet this burden as it relates to Johnson and Mills' opinions as to future income. Therefore, those opinions and that testimony are inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and FRE 702, and must be excluded.

## ARGUMENT AND MEMORANDUM OF LEGAL AUTHORITY

Johnson and Mills must be excluded from testifying at the trial of this matter on the subject of future wage loss or earning capacity because their opinions are speculative, contrary to the principals set forth in *Daubert*, will not assist the jury in resolving the disputed factual issues, and are unduly prejudicial to Defendant. The challenged expert testimony of Johnson and Mills constitutes unsupported, unscientific testimony that is inadmissible pursuant to *Daubert*. FRE 702, which governs the admissibility of expert testimony, provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) **the testimony is based upon sufficient facts or data;**
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

(Emphasis added.) In this case, Johnson and Mills' opinion on future income loss is not "based upon sufficient facts or data."

3

Once a party raises an objection to an expert's testimony, the trial court must perform its gatekeeper duties. *Daubert* at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 ("where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'")(quoting *Daubert*, 509 U.S. at 592.) Although a trial court has discretion in the manner the gatekeeper review is conducted, it has no discretion regarding the fulfillment of its gatekeeper obligation, which must be performed before the jury is permitted to hear the evidence. *See Daubert* and *Khumo, passim.*

As "gatekeepers," courts must exclude unscientific, unreliable testimony from purported "experts." This requirement applies to all "expert" testimony, scientific or otherwise. *Daubert* and *Kumho Tire* recognized four (4) non-exclusive factors important to a court's gatekeeper role:

(1) The extent to which the theory has been or can be tested;

(2) Whether the theory has been subjected to peer review and/or publication;

(3) The technique's known or potential rate of error; and

(4) Whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community.

*Daubert*, 509 U.S. at 593-594. Additional relevant factors identified by federal courts and by some state courts that follow the *Daubert* standard are:

(5) The extent to which the technique relies upon the subjective interpretation of the expert; and

(6) The non-judicial uses which have been made of the theory or technique.

*See United States v. Mitchell*, 365 F.3d 215, 242-43 (3rd Cir. 2004); *E. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

It should initially be noted that Florida law does NOT recognize a claim for future loss of earnings but, rather recognizes a claim for loss of earning capacity. *See Truelove v. Blount*, 954 So.2d 1284, 1288 (Fla. 2d DCA 2007)(citing *W.R. Grace & Co.-Conn v. Pyke*, 661 So. 2d 1301, 1303-04 (Fla. 3rd DCA 1995).

In this case, critical foundational assumptions were made in reaching Johnson and Mills' opinion on future income value and loss. Those assumptions were speculative at best, and at worse were plainly wrong or contrary to the evidence. The experts assumed, per counsel's instruction, that Plaintiff would work until she was 70; however, Plaintiff testified that it was her intent to only work until she was 67 or 67 and a half, when her "Social Security kicked in." (Plaintiff's depo, p.84.) The experts assumed, per counsel's instruction, that there would be no mitigating income; however, Plaintiff has disability that pays 60% of her salary. (*Id.*) The experts assumed, per counsel's instruction, that Plaintiff's lost income would start October 1, 2017 – the very day after this case's trial docket; however, Plaintiff is still working full time as a professor at the University of Tampa and has presented no evidence at all of any imminent plan to quit that job, much less the day after trial.

It is axiomatic that any evidence as to any future wage loss or loss of earning capacity not be based upon mere "speculation, conjecture, or guesswork," and instead, have a reasonable basis in fact. *Swindell v. Crowson*, 712 So.2d 1162, 1164 (Fla. 2d DCA 1998)(holding that insufficient evidence existed to prove damages wherein the Plaintiff "had no documents or other evidence to support her assertion" for a specified amount of damages)(*citing Florida Outdoor v. Stewart*, 318 So.2d 414 (Fla. 2d DCA 1975); *see also: Farrington v. Richardson*, 16 So.2d 158, 162 (Fla. 1944); *Truelove v. Blount*, 954 So.2d 1284 (Fla. 2d DCA 2007); *Benjamin v. Diel*, 831 So.2d 1227 (Fla. 4th DCA 2002).

Prior to being entitled to an award for loss of earning capacity, a plaintiff must present sufficient facts and data that allows the jury to "reasonably calculate" lost earning capacity. *Miami-Dade County v. Cardoso*, 963 So.2d 825, 828 (Fla. 3d DCA 2007); *see also Pyke, supra* (holding that "[g]iven the total absence of evidence supporting a claim for loss of future earning capacity, the trial court should have granted a directed verdict on the issue.") Plaintiff in this case, Lisa Bostick, has not presented sufficient facts and data to support future loss of earning or earning capacity in excess of $1.7 million, which her experts have opined. As noted in *Pyke*, a "plaintiff must demonstrate not only reasonable certainty of injury, but must also present evidence which will allow a jury to reasonably calculate loss earning capacity." *Id.* at 1302. An award for loss of earning capacity that is not supported by evidence demonstrating reasonable certainty will be reversed. *West Boca Medical Center, Inc. v. Marzigliano*, 965 So.2d 240, 245 (Fla. 3d DCA 2007)(*citing Cardoso* at 829).

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, this Court should strike the opinions of Plaintiff's retained experts, Johnson and Mills, concerning Plaintiff's future loss earnings or loss of earning capacity because those opinions are not based on sufficient facts or data.

## LOCAL RULE 3.01(g) CERTIFICATE OF GOOD FAITH

Defendant, STATE FARM, through its counsel, certifies that it has conferred with opposing counsel in good faith in an effort to resolve the issues raised by this motion prior to its filing.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via E-Mail this 4th day of May, 2017, to the following: Michael P. Maddux, P.A.; mmaddux@madduxattorneys.com; jsalter@madduxattorneys.com; ctonski@madduxattorneys.com; Alejandro D. Blanco, Esquire; ablanco@theblancolawfirm.com and Dorothy Clay Sims, Esquire; dcs@dorothyclaysims.com.

Electronically signed by attorney after review

**PAUL U. CHISTOLINI, ESQUIRE**
Florida Bar No.: 645141
**STARR L. BROOKINS, ESQUIRE**
Florida Bar No.:0092284
**Smoak, Chistolini & Barnett, PLLC**
320 W. Kennedy Blvd.
4th Floor
Tampa, FL  33606
(813) 221-1331 Telephone
(813) 223-7881 Facsimile
courtdocuments@flatrialcounsel.com
**Counsel for Defendant**