**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LISA N. BOSTICK,**

    **Plaintiff,**

    v.                                    **CASE NO: 8:16-cv-1400-T-33UAM**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

    **Defendant.**
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**FIRST OMNIBUS MOTION IN LIMINE**

    **COMES NOW** the Plaintiff, Lisa Bostick, by and through the undersigned Counsel and files this Response in Opposition to Defendant's First Omnibus Motion in Limine (Doc. 57), and would respectfully state the following:

    **1.**    On May 4, 2017, Defendant filed an omnibus motion in limine (Doc. 57).

    **2.**    Defendant is seeking to exclude Plaintiff from mentioning, referring to, or attempting to elicit testimony regarding a wide array of permissible items.

    **3.**    It should be noted that many of Defendant's requests are far-reaching, form-based in nature, and without authority. Plaintiff, therefore, responds as follows:

**Preliminary Discussion**

    Defendant's motion is without merit in many cases and unnecessary in most others. All relevant evidence is admissible except as provided by law, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." Red. R. Evid. 401. The Rule's basic standard of relevance is liberal. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). In its motion, Defendant seeks to exclude a host of relevant evidence simply because showing a complete picture of Mrs. Bostick's injuries and the extensive impact they have had on nearly every aspect of her life would be harmful to Defendant's case. While this picture may not be beneficial to Defendant's case, the pixel components of the picture are by no means irrelevant or impermissible. Defendant's position is that this matter is one of a "minimal impact/soft tissue" type, and thus no diagnosis of the treating physician could, under any circumstances, be accurate.

**Plaintiff's payment of automobile insurance premiums and "customer loyalty"**

Plaintiff has no objection to this request. As a corollary, Defendant should not be allowed to argue that they pay "legitimate claims," nor that by challenging questionable claims, Defendant is are somehow assuring the lowest premiums possible for legitimate claimants.

**Limiting "Before and After" Witnesses**

Plaintiff objects to this request as each "before and after" witness is relevant and establishes unique facts concerning plaintiff's background, physical and mental health, and cognitive functioning that demonstrate the variety of harms caused by the collision. Defendant deposed each such witness at length. This testimony is probative rather than cumulative because these witnesses speak to Mrs. Bostick's ability to function in various aspects of life prior to and after the collision. In a case that centers on causation of injuries, nature and extent damages, and the value in U.S. currency of those damages, Defendant's request to limit these witnesses from ten (10) to two (2) is arbitrary, without foundation and draconian. Colleagues have different perceptions of a person than a person's friends or

family members. As such, these witnesses are necessary to show holistically how Mrs. Bostick has changed since the collision. Brain injury alone can be demonstrated by the following observations[1] which would take a collection of witnesses to identify:

- loss of consciousness,
- no loss of consciousness, but a state of being dazed, confused or disoriented,
- headache,
- nausea or vomiting,
- fatigue or drowsiness,
- difficulty sleeping,
- sleeping more than usual,
- dizziness or loss of balance,
- sensory problems such as blurred vision, ringing in the ears, a bad taste in the mouth or changes in the ability to smell,
- sensitivity to light or sound,
- memory or concentration problems,
- mood changes or mood swings,
- feeling depressed or anxious,
- convulsions or seizures,
- dilation of one or both pupils of the eyes,
- clear fluids draining from the nose or ears,
- weakness or numbness in fingers and toes,
- loss of coordination,
- confusion,
- agitation,
- combativeness or other unusual behavior,
- slurred speech,

---

[1] Mayo Clinic Staff, *Diseases and Conditions, Traumatic brain injury, Symptoms*, (May 15, 2014), Mayo Clinic, available at http://www.mayoclinic.org/diseases-conditions/traumatic-brain-injury/basics/symptoms/con-20029302.

- coma or other disorders of consciousness, etc.

Different witnesses will testify about different conditions that can make up the constellation of symptoms in a traumatic brain injury case. We understand that cumulative "she is a totally different person" type of testimony is unnecessary. In this case, witnesses that hold PhDs and other graduate degrees in various departments at the University of Tampa, can provide the jury with detailed accounts of specific behavior showing Mrs. Bostick's pre-injury ability, and now her disability in the same tasks. Mrs. Bostick held many positions at the University, her colleagues won't be discussing the same areas of impairment. Family members will provide information regarding day-to-day impairments. One of the frequent complaints to the jury by Defendants in brain injury cases is the lack of corroboration by non-retained experts of the behaviors that demonstrate the basis for the medical diagnosis of permanent brain injury. In this matter, it appears that the complaint is that there is an excess of corroborating evidence. This matter is set for a 5-7 day jury trial. We can assure the Court, we will present evidence to meet the Plaintiff's burden of proof, and nothing more.

### "Golden Rule" Arguments and "Reptile Strategy"

Basic tort law concepts cover many of the items the Defendants complain of under this section. Tort law is about duty, breach, causation and damages. In short, it is about civil responsibility for the breach of culturally and legally established norms of conduct. We agree that reptiles do not belong in court.

Defendant, State Farm, is choosing to dispute the third and fourth element of the tort formula. However, Plaintiff objects to any limitation on her ability to discuss applicable legal remedies and their purpose in a way that lay jurors will understand. Most citizens

understand civil responsibility as the concept of "fault", or "who is responsible". We are, as is counsel for State Farm, not neutral but advocates. Communicating to jurors in a powerful, persuasive and compelling way does not violate any rule; the Defense will do so.

Over the years, the Defense Bar has organized itself in different institutions; one of the most notable ones is the Defense Research Institute, known as the DRI. It is one of the methods of the DRI to present under the color of a constitutional right to a fair jury trial, a number of motions that attempt to curtail the presentation of arguments to the jury, while at the same time taking advantage of the insurance industry's advertising campaigns. We do not object to State Farm trying their civil liability case in a manner that is vigorous and protective of their position -that Mrs. Bostick's many conditions are a result of her "age related" conditions at 55 years old. If, and when, Defense counsel considers there is improper behavior, which will certainly not be promoted by Plaintiff's counsel, he is certainly able to lodge contemporaneous objections to any legally impermissible matters identified at trial.

Studying and examining the psychology of how to persuade juries is incumbent upon trial lawyers. The art of persuasion or lack thereof happens every day in courtrooms across America. As Justice Breyer noted in his concurrence in *Miller-El v. Dretke*, 545 U.S. 231, 271, (2005), the jury selection process has undergone great study and strategizing resulting in studies and in turn stratagems that "reflect a professional effort to fulfill the lawyer's obligation to help his or her client." The trial of a case by jury is a search for the truth, where two divergent position are presented. The essence of tort law is to determine civil responsibility. Preventing reasoned arguments about civil responsibility seems to seek

to undermine the entirety of our tort system. We are confident State Farm did not comprehend the extended impact of their request when making this motion.

**Improper Statements and Questions During Voir Dire**

The use of hypotheticals is not improper or objectionable. *See Barefoot v. Estelle*, 463 U.S. 880, 903, 103 S. Ct. 3383, 3400, 77 L. Ed. 2d 1090 (1983) (noting that expert testimony, whether in the form of an opinion based on hypothetical questions or otherwise, is commonly admitted as evidence where it might help the factfinder do its assigned job). Plaintiff intends to use hypotheticals when appropriate under the circumstances.

In the context of jury selection, Defendant has a responsibility to pay for legitimate claims. This is what the contract of insurance is all about. Lines of questioning mentioned in this section or variations thereof are not specific factual hypotheticals. Counsel agrees that hypothetical questions are not appropriate when their only purpose is to have jurors indicate in advance what their decision will be under a certain state of the evidence, or upon a certain state of facts and to seek a commitment from jurors if certain facts are shown. *See* Am. Jr. 2d, *Jury Selection* §203. The hypothetical questions assumed by the Defense do not violate the scope of permissible inquiry permitted lawyers to determine their attitudes and viewpoints towards the issues in the case. The questions do not ask about the proof of certain facts as expected to be shown in the case but rather remain general in nature and thus are permissible.

Defense counsel often asks -which we believe will not be the case in this matter- whether, if Plaintiff does not meet the burden of proof, the potential juror can send Plaintiff home with a $0 verdict, notwithstanding any empathy the juror may feel. While this type of questioning has a clear tendency to indoctrinate the jury that a $0 verdict is possible, it

is necessary to determine whether the potential juror will follow the law. Conversely, if the evidence forms a strong persuasion in the potential juror's mind, that the damages are in the tens of millions of dollars, and the law allows for an award of such damages, counsel and the Court need to know whether the juror will follow the law and has the ability to establish a verdict of such magnitude.

Counsel does not intend to present photographs of vehicle damage or personal injury to Plaintiff during voir dire, if any is allowed by the Court. Counsel seeks nevertheless, if permitted by this Honorable Court, to establish the necessary information for the Court to properly rule on jurors' ability to serve as fair and impartial triers of facts.

**Inflammatory Conduct**

We agree not to attack opposing counsel and abide by the rules of professionalism and ethics. Plaintiff is hopeful her counsel will not have to address direct or implied characterizations of Plaintiff's lawyers as greedy, unethical, or otherwise disreputable persons.

Defendant cites *Metropolitan Dade County v. Cifuentes*, 473 So. 2d 297 (Fla. 3d DCA 1985), a case involving a highly emotional trial over the death of a wife and mother of a closely knit family. There, Plaintiff's counsel evoked images of his own personal relationship with his wife and spoke of his own feelings regarding how it would feel to lose her or a loved one.  This represents a whole separate issue, distinct from Plaintiff's counsels' zeal and passion for justice for their client. This section is a veiled attempt to emasculate those traits required for effective representation.

**Counsel and witnesses should be prohibited from interjecting their personal life experiences and personal beliefs into any phase of the trial.**

Mr. Blanco requires assistance of hearing aids which at times provide limited hearing ability at distance, and he should be allowed to explain to the jury why his loss of hearing may impact his understanding and reaction to the proceedings. This is a fact of life, not an attempt to ingratiate counsel with the jury. No case law is cited to support the position that such a mention is improper.

**Plaintiff leaving the courtroom during the testimony of certain witnesses and the explanation of same**

Plaintiff will leave the courtroom during parts of the trial. The extent and nature of Plaintiff's inevitable future decline is a fact that medical doctors do not consider helpful for an injured individual to be repeatedly reminded of, but must be presented to the jury. In this instance, Mrs. Bostick's medical condition has driven her to attempt to commit suicide twice already, and she is actively contemplating ending her life. To hear evidence, or opening statement references to evidence indicating the nature, extent and permanency of her condition is not unnecessary, but inhumane. We understand Defendant disputes Plaintiff's condition, but basic civility requires the avoidance of inhumane treatment. Moreover, Plaintiff should be permitted to explain how Plaintiff's contemplation of suicide due to the concomitant effects of pain-and-suffering from her injury has impacted her life. We trust that the Court will find a way of explaining these matters to the jury, where Defendant State Farm is not unduly prejudiced.

**Impermissible Hearsay Statements, prohibited under Fed. R. Evid. 802-804**

Much of what Defendant complains about in this section concerns Mrs. Bostick's own personal experiences. Her testimony will share her perception of interactions which

confirm to her that she is not functioning at the same levels as before this traffic collision and that the medical conditions she's experiencing are not improving. She heard certain things and had reactions to the statements or events. Defendant is trying to eliminate what Mrs. Bostick witnessed and experienced firsthand as direct evidence about the effects of the collision.  While the Defendant has concerns about what has been said outside of the courtroom, these statements are offered for the context of Mrs. Bostick's own perceptions and as examples of her diminished functioning.  Of note is that Defendant, at the same time in this omnibus motion, is attempting to limit the number of witnesses that would cure their objection on a hearsay basis.  Eliciting direct testimony is a dynamic process and should not be impaired by Defense counsel's speculation about what will or will not be assessed. In the event Defense counsel senses that either improper questions, or objectionable answers are being proffered for the record, contemporaneous objections are a sufficient method to present any legitimate concerns of Defendant. Defendant again cites no authority supporting exclusion. The mental and emotional processes of Mrs. Bostick in response to her interactions with colleagues and students post-injury are relevant to establish the nightmarish reality her brain injury has created, to the point of having attempted suicide two times.

**Spontaneous and nonresponsive statements and utterances by Plaintiff**

Here, defendant attempts to control Plaintiff's demeanor and tangential thinking, which is in fact evidence of her brain injury and beyond her control. One of the main determining factors of frontal lobe injury, which is objectively documented in Mrs. Bostick's case, but disputed as to the cause, is tangential thinking. Tangential thinking is described as behavior where a damaged individual starts a thought, and in mid-sentence, continues with a

tangential thought, non-responsive to the original focus. The thought may be parallel, perhaps even "related" in the mind of the brain injured person, but it is confusing to the listener given the lack of apparent coherence. Mrs. Bostick, as indicated by Defendant, clearly and convincingly displays this behavior. This type of behavior is involuntary, mediated by the damage in Mrs. Bostick brain -according to the evidence presented by her experts. While perhaps distressing to the listener, Defendant seeks to prevent presenting to the jury the very evidence upon which medical experts have determined brain injury symptomatology over decades, now, at the very instance where it also seeks to prove there is no such brain damage.

**Damages of non-parties**

Both Mrs. Bostick's husband, Bill, and her daughter, Katheryn, have certainly been harmed by the impaired cognition and personality Plaintiff suffered from the collision. With regard to trial, the impact the collision injuries have had on Mrs. Bostick's relationship with her daughter, as a mother, and with her husband, as a wife, are certainly relevant to the damages experienced as emotional distress. If these damages are not confirmed by witnesses, for example, her daughter, Defendant State Farm will be allowed to say it is just Mrs. Bostick's perception, and there is no corroborating evidence. The fact that a witness will discuss, for example, the changes in the relationship with her mother, and how it is impaired because of the collision-born impairment just speaks to the depth of Mrs. Bostick's damages. No limitations are in order on this topic of testimony.

**Questions or arguments concerning irrelevant or improper "bad faith" claims or concerning claims handling practices by State Farm**

We agree that this is not the case for bad faith. Evidence regarding good faith or bad faith is not relevant to issues of this case: what medical conditions stem from this traffic collision; whether the trauma from the traffic collision acted upon Mrs. Bostick's body in a manner that it contributed to the creation of medical conditions determined by the medical care providers; whether those conditions are permanent; and the true value of the damages. Whether State Farm acted in good faith or not is not the substance for this trial; that is reserved for the next case. We consider that any order should be reciprocal, and that State Farm should refrain from talking about "gaining something for nothing", accusing counsel of attempting to take "advantage of an opportunity". While we do not believe counsel for State Farm will engage in such behavior, it has become the heated rhetoric of some defense firms to dovetail their defense to the "the jury system is broken" narrative of some advocates.

**<u>Preventing Plaintiff's treating physicians from providing expert testimony</u>**

Defendant attempts to litigate this issue addressed in their prior motion (Doc. 53), once again in this omnibus motion in limine. The fact testimony of doctors includes causation in medical decision-making. The treating doctors are allowed to testify as to why they are treating a patient for a condition. So for example, they were not treating Mrs. Bostick for depression before medical limitations experienced after the accident. Instead, they determined, following the age-old established medical principle of differential diagnosis, that the medical conditions they treated for stemmed from an event. In their medical causation determinations, they treated her for conditions arising from and induced by the collision. To prevent this information from reaching the jury would create an evidentiary vacuum which would encourage the jury to speculate as to the reasons why

medical doctors provided medical care to Mrs. Bostick. Defendant will certainly attempt to rebut the medical substrate and evidentiary basis for the treating physicians, as in the case of the orthopedic injuries where they have recruited Dr. Knesevich, an orthopedic surgeon, to offer medical testimony regarding the likely causes of Mrs. Bostick's condition apart and separate from the trauma in this traffic collision. Ultimately, it is for the jury to determine whether the facts, as interpreted by the treating physicians, support the factual findings of the medical care providers.

## CONCLUSION

Plaintiff intends to vigorously prosecute this case. This motion's attempt to curtail Plaintiff's ability to do should be denied. At the same time, Plaintiff intends to abide by all ethical boundaries and duties sworn to as officers of the Court. Plaintiff respectfully requests this Honorable Court rule in accord with this motion.

*(This portion intentionally left blank)*

**CERTIFICATE OF CONFERRAL**

Pursuant to the mandates of Local Rule 3.05(g), Rules of the U.S. District Court for the Middle District of Florida, the undersigned has conferred with Paul U. Chistolini, Esquire, Counsel for the Defendant, and notes there are some areas of agreement as discussed in the response. Where Plaintiff has not agreed with Defendant's Motion in Limine, the Defendant persists in its position.

**WHEREFORE**, Plaintiff, **LISA BOSTICK**, respectfully requests this Honorable Court deny all aspects of Defendant's First Omnibus Motion in Limine.

**Respectfully Submitted,**

*s/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar Number: 0964212
Trial Counsel for Plaintiff
2102 West Cleveland Street
Tampa, Florida 33606
Phone: (813) 253 - 3363
Facsimile: (813) 253 - 2553
E-Mail: mmaddux@madduxattorneys.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this **15th** day of **June, 2017**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

**MICHAEL P. MADDUX, P.A.**

*s/Michael P. Maddux*
Michael P. Maddux, Esquire