UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA N. BOSTICK,

    Plaintiff,

v.                            Case No. 8:16-cv-1400-T-33AAS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

## ORDER

This cause is before the Court pursuant to Defendant State Farm Mutual Automobile Insurance Company's Motion to Strike Plaintiff's Expert Steven Koontz's Opinions and Testimony (Doc. # 54), filed May 4, 2017. Plaintiff Lisa N. Bostick filed a Response in Opposition to State Farm's Motion on June 5, 2017 (Doc. # 61), and State Farm filed a Reply on June 19, 2017. (Doc. # 68). For the reasons that follow, the Court denies the Motion.

## I.   Background

Bostick filed her Complaint in state court against State Farm seeking payment of underinsured motorist benefits as the result of a car accident that occurred on November 14, 2013.

(Doc. # 2). State Farm removed the case on June 2, 2016, based on complete diversity of citizenship. (Doc. # 1).

On June 29, 2016, the Court entered its Case Management and Scheduling Order setting December 19, 2016, as Bostick's deadline to disclose expert reports. (Doc. # 13). Later, Bostick filed an Unopposed Motion for Extension of Time to Complete Discovery which the Court granted by extending Bostick's expert disclosure deadline to February 14, 2017. (Doc. ## 34–35).

Bostick has retained professional engineer, Steven Koontz, P.E., to offer expert testimony at trial. (Doc. # 54). On February 13, 2017, Bostick provided Koontz's "Traffic Crash Investigation Report" to State Farm, which contains Koontz's analysis and conclusions regarding the physics of the collision and forces that affected Bostick's body. (Doc. # 54-1).

At this juncture, State Farm seeks an Order striking Koontz's testimony and opinions on the grounds that (1) his opinions are not based upon sufficient facts or data and (2) will not help the trier of fact to understand or determine a fact in issue. (Doc. # 54 at 2). State Farm also argues that Koontz's opinions should be stricken because they are either: "not actually opinions, but simply a statement of undisputed

facts; irrelevant; speculative; solely for the purpose of bolstering; unfairly prejudicial; or a combination of these reasons for inadmissibility." (Doc. # 53 at 2-3). The Court will first evaluate whether Koontz's testimony satisfies the evidentiary rules for expert testimony by conducting a Daubert analysis. The Court will then assess the relevance and admissibility of his testimony.

## II. **Daubert Analysis**

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

When a party raises an objection to an expert's testimony, the Court must perform its gatekeeping duty to determine whether the expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993). When deciding Daubert issues, the trial judge has broad discretion in how the review is conducted. Kumho Tire

Co. v. Carmichael, 526 U.S. 137, 152 (1999). Usually, "the rejection of expert testimony is the exception rather than the rule." See Advisory Committee Notes to the 2000 Amendment to Rule 702.

The Eleventh Circuit has adopted a three-part analysis for determining whether expert testimony is admissible under Daubert and Rule 702:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Rink v. Cheminova, Inc., 400 F.3d 1286, 1291–92 (11th Cir. 2005) (internal citations omitted). The party offering the expert has the burden of satisfying each of these elements by a preponderance of the evidence. Id. at 1292; see also Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

### A. Koontz is Qualified

Koontz is a senior forensic engineer at Florida Forensic Engineering. (Doc. # 54-2 at 2). He obtained a Bachelor's degree in mechanical engineering from Purdue University and

4

is licensed as an engineer in Florida. (Id. at 3). Based on these credentials, State Farm does not challenge that Koontz is qualified as an expert in the fields of engineering and physics. Therefore, the Court concludes that Koontz is qualified to testify competently regarding the Traffic Crash Investigation Report and the first prong of the Daubert analysis is satisfied.

**B. Koontz's Methodology**

Koontz determined the forces exerted upon Bostick during the collision by reviewing supplied materials, photographs of the accident, and a property damage estimate. (Doc. # 61 at 6). Koontz utilized these sources to conduct his calculations and analysis. (Id.). The reconstruction approach used by Koontz has been peer reviewed and is one of the accepted engineering methodologies regularly used by experts in the field. (Id.). But, State Farm seeks to exclude Koontz's expert testimony because it is based on speculation and "mere guess work" instead of sufficient facts or data. (Doc. # 54 at 3–4).

The majority of State Farm's arguments rely upon the assertion that Koontz erroneously assumed there was damage to the bumper structure and used this fact in his calculations. (Id. at 3-6). The Court is not convinced Koontz's opinions

and testimony should be stricken. In Taylor, Bean & Whitaker Mortgage Corp. v. GMAC Mortgage Corp., No. 5:05-cv-260-Oc-GRJ, 2008 WL 3819752, at *5 (M.D. Fla. Aug. 12, 2008), the court noted:

> [T]hese arguments go more to the weight of the evidence, than the admissibility of the evidence under Daubert. The Court need not determine that the expert [defendant] seeks to offer into evidence is irrefutable or certainly correct. The certainty and correctness of [the expert's] opinion will be tested through cross-examination and presentation of contrary evidence and not by a Daubert challenge. Indeed the Court's role as gatekeeper is not intended to supplant the adversary system or the role of the jury.

Id.

The reasoning adopted in Taylor, Bean & Whitaker is applicable here. Whether or not Koontz includes a certain variable in his calculations does not establish that his opinions are unsound. An argument against data or facts used in calculations does not discredit the methodology. State Farm should resolve their challenges to Koontz's methodology through the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Allison, 184 F.3d at 1311-12 (quoting Daubert, 509 U.S. at 596).

The Court concludes that Koontz's methodology is sufficiently reliable and satisfies the second factor of the Daubert analysis.

### C.  Koontz Will Assist the Trier of Fact

Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). In other words, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63.

Koontz has applied his education in mechanical engineering, training in accident reconstruction, and professional experience as an engineer to develop his opinions regarding this case. (Doc. # 54-2 at 2–3). He will testify about "the forces involved in the collision impact," not about any medical causation. (Doc. # 61 at 4). It is unlikely that the average lay person possesses the education and training necessary to understand the forces and physics involved in a collision, and the jury will be able to use Koontz's opinions to evaluate the testimony of the medical doctors. (Id.). Thus, the Court finds that Koontz's testimony will assist the trier of fact and denies the Motion to Strike

Koontz's opinions and testimony to the extent those arguments are predicated upon <u>Daubert</u> and Rules 702, 703, and 705 of the Federal Rules of Evidence.

## III. **Relevancy Discussion and Rule 403 Balancing Test**

Koontz's expert report contains the following "Conclusions" reached "within a reasonable degree of Engineering certainty:"

- The rear bumper of the Bostick vehicle was damaged by the crash.
- The front bumper and radiator support of the Alsup vehicle were damaged by this crash.
- Measurements of the exten[t] of these damages were not made.
- The calculations are based on the maximum impact that would cause no structural damage to either vehicle, and thus represent minimum values – the actual values may be significantly higher.
- The Bostick vehicle was at a stop at the time of the crash.
- The front of the Alsup vehicle struck the rear of the Bostick vehicle.[1]
- The impact speed was about 12.6 miles per hour.
- The two vehicles attained a common velocity of about 7.1 miles per hour.
- The Bostick vehicle was accelerated at about 5.4g.
- Ms. Bostick indicated that she braced for impact, serving to reduce the time over which forces were transferred to her from the [seat] and thereby increasing the magnitude of the peak of those forces and accelerations; thus the forces calculated for her head are again a minimum value and the actual values may be significantly higher.

---

[1] It is undisputed that Blair Alsup, a non-party, caused the car accident at issue.

- Ms. Bostick underwent a transverse force of about 571 pounds and a vertical force of about 241 pounds at impact.
- Ms. Bostick's head experienced a transverse force of about 109 pounds and a transverse acceleration of about 13.1g at impact.
- Ms. Bostick's head experienced a vertical force of about 193 pounds and a vertical acceleration of about 23.1g at impact.
- The forces calculated relating to Ms. Bostick are those applied externally by the seat during the crash.
- Forces internal to Ms. Bostick's body are not calculated herein and are typically higher than those applied externally.

(Doc. # 54-1 at 6).

State Farm attacks Koontz's testimony as irrelevant, citing Federal Rules of Evidence 401 and 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. As highlighted by Bostick, the parties disagree as to whether this is a "minor impact" fender-bender case or "one of sufficient force to inflict injuries upon Dr. Bostick." (Doc. # 61 at 8). Koontz's testimony describes the forces involved in the accident. For instance, Koontz theorizes that Bostick "underwent a transverse force of about 571 pounds and a vertical force of about 241 pounds at impact" with her head experiencing "a vertical acceleration of about 23.1g at

impact." (Doc. # 54-1 at 6). State Farm questions the relevance of these calculations. However, State Farm contends that the car crash was a low-impact collision happening at such slow speeds that it was not possible that Bostick sustained the injuries that she claims to have suffered. Due to the dispute regarding the nature of the crash, the strength of the forces involved, and causation for Bostick's alleged injuries and impairments, the Court finds Koontz's testimony is relevant.

State Farm also isolates some of Koontz's opinions and points out that such opinions are really statements of undisputed fact – such as Koontz's "conclusion" that "The Bostick vehicle was at a stop at the time of the crash." (Id.). However, the Court would not strike an expert's opinion as irrelevant because the expert has interwoven undisputed facts and other foundational facts into his testimony. Koontz is an engineer and a crash reconstruction expert. He is not an attorney and has not neatly parceled out each "fact" upon which he bases his conclusions. That Koontz's opinions rest on a firm factual basis actually lends support to testimony, rather than robbing it of relevance.

State Farm also asserts that Koontz has provided "inherently speculative" opinions regarding "something that

'may' occur or . . . something that Koontz did not even calculate." (Doc. # 54 at 10). But, "[t]here are no certainties in science." Navelski v. Int'l Paper, No. 3:14-cv-445, 2017 U.S. Dist. LEXIS 44411, at *16 (N.D. Fla. Mar. 25, 2017)(citing Daubert, 509 U.S. at 590). The Court rejects State Farm's assertion that Koontz, a senior forensic engineer, has provided an "inherently speculative" opinion regarding the forces at play in a car accident. During the course of the trial, State Farm is free to question Koontz regarding his methods, but State Farm has not shown that Koontz relies on mere speculation such that his opinion is reduced to the point of irrelevance.

Nor has State Farm demonstrated that Koontz's opinion should be excluded under Rule 403. Rule 403 allows a Court to exclude relevant evidence when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Here, State Farm contends that the probative value of Koontz's testimony is outweighed by the confusing and misleading nature of his opinions. The Court will perform the Rule 403 balancing test at the time of the trial, but at this preliminary juncture,

the Court is not convinced that Koontz's testimony should be characterized as either misleading or confusing.

The Court also rejects State Farm's assertion that Koontz's opinions constitute improper "bolstering." (Doc. # 54 at 9). Bostick persuasively contends:

> The forensic engineering analysis provides a description of the forces at work during the accident. The forces are relevant to show what the body experienced during the accident. How the body responds to the forces through symptoms and development of medical conditions, along with the extent and permanency of the body, brain and mind impairments is a medical question. The doctors can speak to body symptoms and conditions reasonably likely medically connected to forces of the nature described by Mr. Koontz.

(Doc. # 61 at 9). Rather than presenting "dangling" conclusions of "no consequence in determining this action," Koontz will use his engineering experience to supply an expert opinion based on the laws of physics and other scientific foundations. (Doc. # 54 at 7). His testimony regarding the forces Bostick's body encountered during the car crash is relevant and the probative value of his testimony is not substantially outweighed by the perils enumerated in Rule 403. The Motion is thus denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant State Farm Mutual Automobile Insurance Company's Motion to Strike Plaintiff's Expert Steven Koontz's Opinions and Testimony (Doc. # 54) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of June, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE