```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

LISA N. BOSTICK,

     Plaintiff,

v.                                  Case No. 8:16-cv-1400-T-33AAS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Plaintiff Lisa N. Bostick's Motion to Limit Defendant's Expert Witness, Michael J. Foley, M.D. (Doc. # 59), filed June 1, 2017. Defendant, State Farm Mutual Automobile Insurance Company filed a Response in Opposition to Plaintiff's Motion on June 30, 2017. (Doc. # 72). For the reasons that follow, the Court denies the Motion.

**I.   Background**

Bostick filed the Complaint in state court against State Farm seeking payment of underinsured motorist benefits related to a car accident that occurred on November 14, 2013. (Doc. # 2). State Farm removed the case on June 2, 2016, based on complete diversity of citizenship. (Doc. # 1). Bostick,

1

a University of Tampa professor, claims to have suffered a disabling and permanent brain injury (axonal shearing) as a result of the crash. (Doc. # 67 at 4). While Bostick claims that the car accident was a significant and traumatic incident, State Farm characterizes the crash as a mere fender bender.

State Farm retained expert witness, Michael J. Foley, M.D., a radiologist, and disclosed the same to Bostick on March 10, 2017. (Doc. # 72 at 2). State Farm retained Dr. Foley "to assist the jury's understanding of traumatic brain injuries" and "to read Plaintiff's numerous radiographic films, including MRIs of the brain [and] to offer opinions within his area of specialty as to his radiological interpretation of those images." (Id.).

Dr. Foley was deposed on May 12, 2017, during which he stated that because he did not review all of the medical records, he would be unable to give a total causation opinion. (Doc. # 59 at 1-2). He added that, in effect, radiology alone is insufficient to diagnose a brain injury from an MRI; "it requires clinical correlation." (Id. at 4). Bostick accordingly seeks an order limiting Dr. Foley's opinion and specifically precluding him from offering causation testimony. In its response, State Farm explains that Dr.

Foley is not going to give a global causation opinion, but, rather, his opinion will reflect what he saw on the films.

**II. <u>Discussion</u>**

Federal Rules of Evidence Rule 702, which governs the admissibility of expert testimony, states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

When a party raises an objection to an expert's testimony, the Court must perform its gatekeeping duties to determine whether the expert testimony "is not only relevant, but reliable." <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579, 589 (1993). When deciding <u>Daubert</u> issues, the trial judge has broad discretion in how to conduct the review. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999). Usually, "the rejection of expert testimony is the exception rather than the rule." <u>See</u> Advisory Committee Notes to the 2000 Amendment to Rule 702.

The Eleventh Circuit has adopted a three-part analysis for determining whether expert testimony is admissible under Daubert and Rule 702:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Rink v. Cheminova, Inc., 400 F.3d 1286, 1291–92 (11th Cir. 2005) (internal citations omitted). The party offering the expert has the burden of satisfying each of these elements by a preponderance of the evidence. Id. at 1292; see also Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

### A. Dr. Foley is Qualified

State Farm included Dr. Foley's CV, which reflects that Dr. Foley has over thirty-five years of medical and radiological experience in interpreting radiologic images and seeing, diagnosing, and treating patients. (Doc. # 72 at 5). During his professional career, he received triple board certification by the American Board of Radiology. (Id.). In addition, he is among the 10% of radiologists to have the

distinction of being elected as a Fellow of the American College of Radiology. (Id.). Since 1987, he has been qualified as an expert in both state and federal courts in Florida on numerous occasions. (Id.)

Based on these credentials, Bostick does not challenge the qualifications of Dr. Foley as an expert in the field of radiology. Therefore, the Court concludes that Dr. Foley is qualified to testify competently regarding his findings in the radiology report on Bostick. The first prong of the Daubert analysis is satisfied.

### B. Dr. Foley's Methodology is Sound

The methodology used by Dr. Foley is standard and consistent with the literature and methodology used by radiologists in the United States. (Id. at 6). It is within the province of radiologists to view an MRI and differentiate between evidence of acute injury versus evidence of degeneration due to the aging process. (Id. at 7).

Bostick relies heavily on Dr. Foley's deposition testimony to support her present motion. She contends that Dr. Foley, by his own admission, cannot sufficiently diagnose a brain injury from an MRI. (Doc. # 59 at 4). Rather, "[causation] requires clinical correlation." (Id. at ¶ 1). Bostick seeks to exclude or limit Dr. Foley's testimony

5

because "State Farm should not be permitted to request Foley to speculate based on the limited scope of his clinical inquiry." (Id. at ¶ 2).

The Court is not convinced by Bostick's argument. Bostick is free to bring Dr. Foley's statements regarding causation to the attention of the jury and to cross-examine Dr. Foley in this regard. However, Dr. Foley's statements, which reflect his careful and nuanced opinion regarding the limitations of radiological evidence in extrapolating causation, are not a basis for striking or limiting Dr. Foley's testimony. In Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp., No. 5:05-cv-260-Oc-GRJ, 2008 WL 3819752, at *5 (M.D. Fla. Aug. 12, 2008), the court noted:

> [T]hese arguments go more to the weight of the evidence, than the admissibility of the evidence under Daubert. The Court need not determine that the expert [defendant] seeks to offer into evidence is irrefutable or certainly correct. The certainty and correctness of [the expert's] opinion will be tested through cross-examination and presentation of contrary evidence and not by a Daubert challenge. Indeed the Court's role as gatekeeper is not intended to supplant the adversary system or the role of the jury.

Id.

The reasoning adopted in Taylor, Bean & Whitaker is applicable here. And, although Dr. Foley will not have reviewed every available medical record in making his

determination, Bostick has not shown that Dr. Foley's testimony is unsound. (Doc. # 59 at 1-2). Bostick should resolve her challenges to the expert's methodology through the adversary system. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Allison, 184 F.3d at 1311-12 (quoting Daubert, 509 U.S. at 596).

The Court concludes that Dr. Foley's methodology is sufficiently reliable and satisfies the second factor of the Daubert analysis.

**C. Dr. Foley Will Assist the Trier of Fact**

Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). In other words, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63.

Dr. Foley, a physician with thirty-five years of experience in diagnostic radiology, will assist the jury as they are confronted with radiological evidence. In addition to studying and practicing radiology, Dr. Foley has also

taught at two different medical schools. Given Dr. Foley's experience and the complexity inherent in the field of radiology, it is unlikely that the average lay person possesses the education and training necessary to understand what is shown on the radiological film and, more importantly, what the significance of those findings are. Thus, the Court finds that Dr. Foley's testimony will assist the trier of fact and denies the Motion to Strike.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Plaintiff Bostick's Motion to Limit Defendant's Expert Witness, Michael J. Foley, M.D. (Doc. # 59), is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of July, 2017.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE